RECEIVED
MAR - 2 2011
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

HERBERT FISHER

versus             CIVIL ACTION NO. 08-1581
                         JUDGE TOM STAGG

REGIONS BANK
*formerly doing business as*
AMSOUTH BANK

---

## MEMORANDUM RULING

Before the court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which was filed by the defendant, Regions Bank ("Regions"). See Record Document 40. Based on the following, the defendant's motion is **GRANTED**.

### I. BACKGROUND

On October 1, 2008, Herbert Fisher ("Fisher") filed a petition for damages in the First Judicial District Court in Caddo Parish, Louisiana. See Record Document 1. Regions timely removed the state action to this court. See id. In his petition, Fisher asserts that he based a decision to transfer certain immovable property to a

home builder on promises made by employees at AmSouth Bank ("AmSouth"). AmSouth was later purchased by Regions.[1] See Record Document 1.

On January 7, 2005, Fisher entered into a cash sale deed with Jack T. Bond Builders, Inc. for the builder to build a new house on the property. AmSouth was the builder's bank. According to Fisher, AmSouth representatives promised to finance the construction of a home on his property if Fisher transferred his land to the builder as security. Fisher also alleged that AmSouth representatives assured him they would monitor the construction of the new house and agreed to loan him the funds necessary to repurchase the property and secure the new house once construction was completed. See id. In his deposition, Fisher clarified that he was promised by AmSouth employees that he would be "under the protection of the bank" and that he had "nothing whatsoever to worry about." Record Document 48, Deposition of Fisher at 31.

Before completing the construction of the new house, the builder defaulted on his bank loans and declared bankruptcy. As a result, the land formerly owned by Fisher became part of the builder's bankruptcy estate. Fisher alleges that AmSouth

---

[1] For ease of reference, the court will refer to the defendant as AmSouth throughout the remainder of this opinion.

subsequently purchased his former property at a tax sale for $150,000 and resold it. See Record Document 1.

Fisher argues that AmSouth failed to satisfy its contractual and fiduciary duties to monitor the home builder and protect his interest. He claims AmSouth knew that the builder was overextended and failed to communicate this finding to him. See id. Fisher claims that AmSouth's actions constituted fraud. He also asserts a cause of action for detrimental reliance. AmSouth avers that all of the claims asserted by Fisher are barred by Louisiana's Credit Agreement Statute. See La. R.S. 6:1121, et. seq.

## II. LAW AND ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

---

[2] The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

3

element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

**B.      Breach Of Fiduciary Duty.**

The Louisiana Credit Agreement Statute operates as a "statute of frauds" for the credit industry. See EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, 467 F.3d 466, 469 (5th Cir. 2006) (quoting King v. Parish Nat'l Bank, 885 So.2d 540, 546 (La. 2004)). The purpose of the statute is "to prevent potential borrowers from bringing claims against lenders based on oral agreements." EPCO, 467 F.3d at 469 (quoting Jesco Constr. Corp. v. Nationsbank Corp., 830 So.2d 989, 992 (La. 2002)). As mentioned, AmSouth contends that all of Fisher's claims are precluded by the Louisiana Credit Agreement Statute.

The Louisiana Credit Agreement Statute, as detailed in Louisiana Revised Statute section 6:1122, et. seq., provides:

> A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

La. R.S. 6:1122. A "creditor" is defined in Louisiana Revised Statute section 6:1121 as "a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor." A "credit agreement" is "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." La. R.S. 6:1121. Louisiana Revised Statute section 6:1123 explicitly states that the following actions "shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of [La.] R.S. 6:1122:"

> (1) The rendering of financial or other advice by a creditor to a debtor.
>
> (2) The consultation by a creditor with a debtor.
>
> (3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.

La. R.S. 6:1123. Most importantly, Louisiana Revised Statute section 6:1124 provides, in pertinent part:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to **third parties** other than shareholders of the institution, unless there is a **written agency or trust agreement** under which the financial institution **specifically agrees to act** and perform in the capacity of a fiduciary.

La. R.S. 6:1124 (emphasis added).

Fisher asserts that AmSouth breached a fiduciary duty to him. However, Fisher was neither a customer nor a shareholder of AmSouth. No evidence has been presented indicating that a written agency or trust agreement existed between Fisher and anyone at AmSouth. Fisher does not contend that AmSouth's representations were committed to a writing signed by both parties or that AmSouth agreed in writing to act or to perform in the capacity of a fiduciary. In addition, in response to interrogatories and requests for production of documents from AmSouth, Fisher failed to provide any evidence of a written agreement with AmSouth. Instead, Fisher simply referred to his original petition, wherein there is no allegation of a written agreement between Fisher and AmSouth. Fisher has failed to provide any evidence of a fiduciary duty owed to him by AmSouth.

Fisher alleges that a fiduciary relationship arose by virtue of the representations made to him by AmSouth employees, citing Trans-Global Alloy Limited v. First National Bank of Jefferson Parish, 583 So.2d 443 (La. 1991). See Record Document 48 at 3-4. In Trans-Global, the court held that because of the special "trust relationship" that arose when the bank took on the role of pledgee with the "attendant duties to protect the debt or the obligation and the collateral," a reasonable jury could have found that the bank breached a fiduciary duty. Id. at 453 (citation omitted). Trans-Global, however, is clearly distinguishable from the instant facts. In this case, there is no special relationship between AmSouth and Fisher.

In addition, even if the court found Fisher's relationship with AmSouth to be sufficiently similar to the relationship of the parties in Trans-Global, the Louisiana Legislature subsequently enacted Louisiana Revised Statute section 6:1124 directly addressing this issue. A review of the jurisprudence indicates that this statute effectively overruled Trans-Global. See Guidry v. Bank of LaPlace, 661 So.2d 1052 (La. App. 4th Cir. 1995); Whitney Nat'l Bank v. Chatelain, No. 91-2432, 1992 WL 73345, *7 (E.D. La. Apr. 2, 1992).[3] Accordingly, this court finds that AmSouth owed

---

[3]Assuming that Fisher has stated a claim for negligent misrepresentation, such a claim would not exist without a fiduciary duty. Therefore, Louisiana Revised Statute section 6:1124 would preclude the possibility of a claim against AmSouth for negligent misrepresentation unless there was a contract or written agreement stating that the bank had a fiduciary obligation to Fisher. See Priola

no fiduciary duty to Fisher. AmSouth did not breach a fiduciary duty to Fisher, as no such duty existed.

## C. Remaining Claims.

AmSouth contends that Louisiana Revised Statute section 6:1122 precludes Fisher from maintaining any "action" against it. The term "action" in section 6:1122 has been interpreted broadly. In Jesco Construction Corp. v. Nationsbank Corp., 278 F.3d 444 (5th Cir. 2001), the United States Court of Appeals for the Fifth Circuit certified the question of whether the Louisiana Credit Agreement Statute "precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted" to the Louisiana Supreme Court. See Jesco Constr. Corp. v. Nationsbank Corp., 830 So.2d 989 (La. 2002). The Louisiana Supreme Court answered in the affirmative, explaining that the term "action" is any "demand for the enforcement of a legal right." Id., at 991-92 (quoting James v. Formosa Plastics Corp. of La., 813 So.2d 335, 338 (La. 2002)).

The reach of the Louisiana Credit Agreement Statute was again addressed by the Louisiana Supreme Court in King v. Parish National Bank, 885 So.2d 540 (La. 2004). In King, the court again concluded that the Louisiana Credit Agreement Statute precludes "all actions" against a creditor absent an agreement in writing. See

---

Constr. Corp. v. Profast Dev. Grp., 21 So.3d 456, 462 (La. App. 3d Cir. 2009).

King, 885 So.2d at 542; see also Jesco, 830 So.2d at 992; Fortenberry v. Hibernia Nat'l Bank, 852 So.2d 1221, 1228 (La. App. 3d Cir. 2003) (rejecting argument that the statute does not cover allegations of fraud).

AmSouth asserts that since Fisher's claims all emanate from a credit agreement, all of the claims are precluded:

> [Fisher] alleges he transferred his lot to a builder in reliance on an oral agreement to loan him an amount sufficient for him to purchase the house and lot after construction. All of the additional factual allegations are based on the alleged oral promise to make a loan. Plaintiff's claim of an oral promise to monitor the construction and his claim he was not told the builder was over-extended flow directly from the alleged original oral promise.

Record Document 40 at 4. The courts have issued clear pronouncements that all "actions" against a creditor are precluded by the Louisiana Credit Agreement Statute unless in writing. This court is in agreement that all "actions" based upon a credit agreement are precluded by the Louisiana Credit Agreement Statute. All of Fisher's

claims fall under this preclusion and should be dismissed.[4]

---

[4]Even if this court were to find that Fisher's claims for detrimental reliance, fraud or breach of contract were not precluded by the Louisiana Credit Agreement Statute, his claims for such would, nonetheless, fail. As to a claim for detrimental reliance, Louisiana Civil Code article 1967 provides, in pertinent part:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

La. Civ. Code art. 1967. Fisher's detrimental reliance claim is essentially based upon statements by two AmSouth employees to him stating that they would monitor the construction and that he was under the protection of the bank. The court cannot glean any attempt to mislead Fisher by anyone at AmSouth from these statements. See Priola Constr. Corp. v. Profast Dev. Grp., 21 So.3d 456, 463 (La. App. 3d Cir. 2009).

As to Fisher's claim of fraud, Louisiana Civil Code article 1953 provides that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code art. 1953. "To find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information." Am.'s Favorite Chicken Co. v. Cajun Enter., 130 F.3d 180, 186 (5th Cir. 1997) (quoting Greene v. Gulf Coast Bank, 593 So.2d 630, 632 (La. 1992)). This duty could arise from statute or from a special relationship between the parties, such as a fiduciary relationship. See id. (quoting Greene, 593 So.2d at 633). Fisher has failed to identify any duty of AmSouth that would have required it to disclose the facts about which Fisher complains. In addition, Fisher has not submitted any evidence that the bank even had possession of the information indicating that his builder was in financial trouble.

Finally, there is no evidence whatsoever that there was a contract between Fisher and AmSouth. Therefore, summary judgment as to any breach of contract claim would clearly be appropriate.

## III. CONCLUSION

Based on the foregoing, AmSouth's motion for summary judgment (Record Document 40) is **GRANTED**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 2nd day of March, 2011.

_____
JUDGE TOM STAGG